[No. 12636. Department Two. September 21, 1915.]

## ANTON LEHTINEN, *Respondent*, v. WILLIAM HOLPA, *Appellant*.[1]

PRINCIPAL AND AGENT—LIABILITY FOR FRAUD OF AGENT—EMPLOYMENT—EVIDENCE—QUESTION FOR JURY. Where defendant assumed to act as a broker in procuring business for an attorney, in consideration of a private arrangement whereby defendant received half of the attorney's fees for procuring the business, it is for the jury to determine whether the attorney was the defendant's agent for whose positive breach of trust in the premises the defendant would be liable; and in such a case a verdict for the plaintiff is sustained, where there was evidence to the effect that defendant introduced the attorney to the plaintiff, who was unable to speak English, as a competent man to represent plaintiff in forwarding a certificate of deposit for the payment of land, that defendant was present and advised such an indorsement of the certificate that, without plaintiff's knowledge, it was payable to the attorney, who obtained its return and misappropriated the proceeds, and that defendant consulted with the attorney from time to time about it, and made the charge and collected the entire attorney's fee for the work.

SAME—LIABILITY FOR FRAUD OF AGENT—EMPLOYMENT—EVIDENCE—ADMISSIBILITY—RES GESTAE. In such a case, in which the defendant claimed that he was only employed as an interpreter between plaintiff and the attorney and assumed no other responsibil-

[1]Reported in 151 Pac. 829.

ity, the correspondence between the attorney and the bank, touching the efforts being made to perfect the title for which the money was sent, is inadmissible as corroborating the defendant's claim that he was only an interpreter, where it is admitted that defendant had no knowledge of such correspondence; as the same was no part of the *res gestae* of the original transaction.

SAME—LIABILITY FOR FRAUD OF AGENT—EMPLOYMENT—EVIDENCE —MATERIALITY. Such correspondence was not admissible to show that the money was actually sent to the bank for the purpose intended, since that was immaterial where the real issue was as to whether plaintiff had employed the defendant to attend to the remittance and defendant had engaged the attorney for his own assistance.

SAME—LIABILITY FOR ACTS OF AGENT—INSTRUCTIONS—STATEMENT OF ISSUES. In such a case, where full and proper instructions were given covering the main issue as to whether plaintiff employed the defendant to look after the business or only .as an interpreter, and properly covering the liability of the defendant in all contingencies, it is not error to close the instructions by a statement that it is admitted in the pleadings that plaintiff lost his money through the transaction either by the conduct of the attorney or the defendant or both, where that was the effect of the admissions in the pleadings although not stated in so many words, and the court had already instructed the jury that it was for them to determine to which of them the business was intrusted.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered July 15, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for damages. Affirmed.

*A. Emerson Cross*, for appellant.

ELLIS, J.—This is an action for damages. In the amended complaint it is alleged, that the plaintiff, a Finn, being unable to transpose the Finnish language into English or to write English, employed the defendant to write in his behalf a letter in English to the First National Bank of Fresno, California, and to send therewith a certain certificate of deposit, issued to the plaintiff by the First National Bank of Hoquiam for $1,296; that the defendant held himself out to the Finnish people and to the plaintiff as being

a skilled interpreter capable of rendering such services for pay; that the defendant called in one Wilson Buttner to assist in the transaction, and, after consultation with him, dictated the letter and told plaintiff to register it; that the defendant and Buttner directed the plaintiff to indorse in blank the certificate, which he accordingly did; that the plaintiff directed that the letter be written for his own signature and that the letter be registered in his own name, but the letter was not so written nor so registered, but was signed by Buttner and registered in Buttner's name; that the plaintiff registered the letter and took a receipt therefor which he afterwards learned was in Buttner's name; that thereafter Buttner caused the draft to be returned to him from the bank in California, receiving the same at the office occupied by him in common and in association with the defendant; that the money evidenced by the certificate was not applied to the purpose intended; that plaintiff has demanded from the defendant a return of the money; that the demand was refused, to plaintiff's damage in the sum of $1,296; that the plaintiff employed the defendant to attend to all of the business connected with the remittance and paid him the reasonable charge of five dollars demanded therefor; that the things done by Buttner in the premises were done with the defendant's knowledge, or he should have known of them, he having been employed by the plaintiff to attend to the business and all of it. A demurrer to the complaint was overruled.

The defendant answered, admitting many of the things alleged in the complaint, but denying that plaintiff instructed that the letter be written for his own signature, or that he wished it registered in his own name, denying that plaintiff did not know that it was registered in Buttner's name, and denying that defendant instructed plaintiff to indorse the certificate. The defendant alleged affirmatively that the plaintiff, on June 11, 1910, employed Buttner as his attorney in the purchase of certain land near Fresno,

California; that Buttner advised plaintiff of certain defects of title to the land; that plaintiff instructed Buttner to send the money to pay for the land in such way as to secure a clear title before the money was paid over; that the money was sent as it was sent on the advice of Buttner; that the letter was written and the certificate sent for the plaintiff by Buttner as his attorney; that defendant merely acted as interpreter between them; that the letter and certificate were registered by the plaintiff and were received by the First National Bank of Fresno; that Buttner, without defendant's knowledge, procured the return of the certificate to himself individually, cashed it, and applied the money to his own use, of which fact the defendant was ignorant until long afterwards, and that defendant never received any part of the proceeds of the certificate. The reply traversed this affirmative matter.

The jury found for the plaintiff in the sum of $1,296. At appropriate times the defendant moved for a nonsuit, for a judgment *non obstante*, and for a new trial. These motions were overruled and judgment was entered upon the verdict. The defendant appealed.

The numerous assignments of error as grouped and discussed by the appellant, their order being changed for convenient consideration, present the following claims: (1) That the evidence was insufficient to sustain the verdict; (2) That certain letters and copies of letters which passed between Buttner and the Fresno bank and its attorney were improperly excluded; (3) That the court's instructions to the jury were fatally erroneous or defective.

I. The dominant question of fact is, Did the respondent employ the appellant to conduct the entire business, or did he employ Buttner as his attorney for that purpose and the appellant only as an interpreter? It is conceded that the respondent, through correspondence not here material, had entered into a contract with one Cary, of Reedly, California, to purchase forty acres of land near Fresno, in that state,

and had subsequently agreed to sell one-half of the land to another Finn named Hill. About two years prior to the transaction here in question, Holpa and Buttner organized the Aberdeen Investment Company, which it seems made a specialty of conducting business for the Finnish population in the Grays Harbor country. Shortly prior to this transaction, Buttner had sold his interest in the company to one Grobe. At this time, Holpa and Grobe owned nearly all of the stock of the company; Buttner, none of it. There is evidence tending to show that the respondent and Hill were presented by a mutual friend with a card of this company, and referred to the appellant as a man who could draw up a contract between them and conduct the correspondence necessary to close the purchase of the land from Cary. While there was some evidence tending to show that the appellant was acting in this transaction as an officer of the company, there was also evidence from which the jury might have found that the respondent looked to appellant personally in the premises. He was not advised that he was dealing with the company at any time during the transaction.

The evidence shows that, prior to Buttner's selling his interest in the investment company, all business requiring the services of an attorney coming to the company was attended to by him and the fees for such services paid to the company as a part of its earnings; that the company held itself out as prepared to attend to legal matters through its attorney; that, after Buttner's withdrawal from the company, the same course was pursued under an agreement between Buttner, the company and Holpa, whereby, when the company or Holpa turned legal matters over to Buttner for attention, Buttner received one-half of the fee and the company or Holpa the other half, the fee being charged by Holpa or the company according as the business came through Holpa or the company. Such was the testimony of Buttner and it is nowhere contradicted. The evidence tends to show that it was in pursuance of and because of this agreement

that Holpa turned this business over to Buttner, advising
the respondent that he needed an attorney and introducing
Buttner as a competent man for the purpose. The evidence
also tends to show that the certificate of deposit was in-
dorsed by the respondent and sent to the Fresno bank in
Buttner's name at Buttner's suggestion in Holpa's presence,
and on the advice of both Buttner and Holpa. The respond-
ent, Buttner and Holpa all testified that Buttner made no
charge for his services, but that the charge was made by,
and the fee paid to, Holpa. Buttner testified, and Holpa
did not deny, that Buttner's share was applied on a debt
due from him to Holpa under a standing agreement between
them.

Upon the whole evidence, we think it was for the jury to
say whether Holpa was employed by the respondent to at-
tend to the entire matter, and whether Holpa, through
Buttner as his own agent, undertook the work, and whether
all of the participants so understood at the time. That such
was the understanding of the respondent can hardly be
questioned, and that it was also that of Holpa and Buttner
is borne out by the fact that Buttner refused to make a
charge for or accept pay for his services from the respond-
ent, while Holpa did make the charge and collected the fee
for the entire work. This is also borne out by the fact that
the respondent, from time to time, from the woods where he
was at work, called up Holpa by telephone to know how the
business was progressing, and that on such occasions Holpa
would consult with Buttner and report. It is true that some
of the evidence was capable of the construction that Holpa
merely introduced Buttner as an attorney, and that re-
spondent, by permitting Buttner to take charge of the bus-
iness, tacitly employed him to attend to it. But this con-
struction would ignore the arrangement between Holpa and
Buttner that Holpa should turn over law business coming to
him or the company to Buttner and divide the fees with him,

and that this was actually done in this case, a circumstance which the jury had the right to consider, and evidently did consider, as a controlling factor. We decline to hold, as a matter of law, that one who assumes to act as a broker in procuring business for an attorney in consideration of a private arrangement whereby he is to receive half of the fees for procuring the business cannot be held to respond to the client for the attorney's breach of trust in conducting the business so procured. Such a practice is ethically indefensible at best. The courts will hardly search for a way to facilitate its safe indulgence. There was ample evidence from which the jury might have found that Buttner's connection with the business was traceable solely to an arrangement of this character with the appellant, who received from the respondent pay for Buttner's services. While this would not make Buttner and the appellant partners in the technical sense, it is sufficient to sustain a finding by the jury that Buttner was the appellant's agent, for whose positive breach of trust in the premises the appellant should respond. The evidence was sufficient to sustain the verdict.

II. The appellant offered in evidence certain correspondence consisting of letters which passed between Buttner and the officers of the First National Bank of Fresno and the attorney for that bank, touching the efforts being made to perfect the title to the Cary land. The correspondence consisted of letters from the bank and its attorney and copies of letters from Buttner to the bank. Assuming that the copies of the letters, though not the best evidence, were admissible because the originals were outside of the jurisdiction of the trial court, we think, nevertheless, that this correspondence was immaterial. The appellant contends that it was admissible as tending to corroborate Holpa in his claim that the only employment he undertook for the respondent and the only responsibility he assumed was that of an interpreter between the respondent and Buttner. It was not competent for this

purpose, since Buttner admitted that the appellant did not know of this correspondence. It was no part of the *res gestae* in the original employment.

It is also contended that this correspondence was competent evidence to show that the money was actually sent to the Fresno bank for the purpose intended by the respondent, to be held until the title to the land was perfected. This, however, is immaterial to the real issues presented by the amended complaint and the answer, namely, that the respondent employed Holpa to attend to the remittance and that Holpa called Buttner into the transaction for his own assistance. The correspondence had no tendency to prove that the respondent had employed Buttner or looked to anybody but the appellant to attend to his business for him, or that he reposed confidence in any one but Holpa, whom alone he paid for the service.

III. The court, after stating that the main issue was whether the respondent employed appellant to look after the business or merely as an interpreter between himself and Buttner, instructed the jury to the effect that the burden of proof was upon the respondent to show that he did employ the appellant to look after the business for him and that the appellant undertook it in person, and that, if the jury so found, it was the appellant's duty to follow any specific instruction given him; that if there were no specific instructions, then it was his duty to look after the business generally and use reasonable care and caution in conducting it, considering its nature and character, and that, for a failure in either of these respects, he would be responsible to the respondent. The court also instructed the jury that, if it found that the respondent understood that the investment company was to attend to the business, then Holpa would not be generally responsible, unless he was guilty of lack of good faith or fraud in his own connection with the matter; and that it was for the jury to say whether or not the employment was that of the

company or of the appellant personally, and that it was also
for the jury to say whether the appellant was employed other-
wise than as a mere interpreter.  The jury were also in-
structed that, if it found that the appellant was a partner
with Buttner in transacting this business and that the money
was lost to the respondent through the misconduct of the
partner, then the appellant would be liable.  The court closed
the instructions as follows: "As I have stated, I believe the
pleadings admit that the plaintiff lost this money through
this transaction, either by the conduct of Buttner or Holpa
or both."  On the request of appellant's attorney, the court
added that the mere fact that the Aberdeen Investment Com-
pany had a contract with Buttner would not make Holpa
and Buttner partners.

We think these instructions correctly state the law of the
case and sufficiently submitted to the jury every material
question of fact involved.  The appellant contends that the
statement that it was admitted in the pleadings that the
money was lost to the respondent, either by the conduct of
Buttner or Holpa, or both, is not borne out by the record.
While the admission is not made in these words, nor baldly as
stated by the court, it is nevertheless admitted that the re-
spondent lost the money and, as our epitome of the pleadings
shows, lost it through placing the business in the hands of
Holpa or Buttner.  The court had already instructed that it
was for the jury to determine to which of these the respond-
ent entrusted the business.  The claim, therefore, that these
instructions eliminated all consideration of the respondent's
conduct in the premises is without merit.

We shall not review the various instructions requested by
the appellant and refused by the court, further than to say
that, after a careful examination of them, we are convinced
that they were sufficiently covered, so far as proper, by the
instructions given.

We have not had the assistance of a brief on the respond-
ent's part in this case.  We have, however, examined the

record with much care and have read all of the evidence. We fail to find any material error.

The judgment is affirmed.

MORRIS, C. J., MAIN, and FULLERTON, JJ., concur.